IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

ELIANE LEVY, and those she
represents,

        Plaintiff,

v.

        No. 11-CV-00978 WYD-KLM

CLAYTON DOWNEY WORTHINGTON, PROGRESSIVE
OVERLOAD, LLC, MARK TYSON,
GORDON KACALA, RITA KACALA
COLORADO VELODROME ASSOCIATION, INC.,
USA CYCLING, INC., and
UNITED STATES OLYMPIC COMMITTEE,

        Defendants.



EXHIBIT 2

## AFFIDAVIT OF PIERRE LEVY PURSUANT TO
## FED. R. CIV. P. 56(d)

AFFIANT, Pierre Levy, hereby comes forth under oath and states the following:

1. My name is Pierre Levy. I am over the age of 18 and competent to testify. I am one of Plaintiff's attorneys in the above-captioned case. I state the following based on my personal knowledge. For the following reasons, Plaintiff is unable to completely address the arguments Defendant Mark Tyson brought forth in his motion for summary judgment [Doc. No. 42].

2. On June 21, 2010, by agreement of the parties, all parties who had entered an appearance served their Rule 26 initial disclosures.

3. On July 21, 2011, after reviewing Defendants' initial disclosures, I served a first round of discovery on all Defendants who had entered an appearance, including Defendant Mark Tyson and Defendant Colorado Velodrome Association ("CVA"). As of the filing of this Response, no Defendant has provided any responses to Plaintiff's first round of discovery.

4. Some of the discovery sought from Defendant Tyson included the following:

    A.    Whether he kept a diary or journal on or after June 19, 2010

(Interrogatory No. 1).

B. Whether he belonged to or maintained social networking sites on or after June 19, 2010 (Interrogatory No. 2).

C. Whether, prior to June 19, 2010, he had any knowledge of collisions involving cyclists doing timing runs and stationary persons or objects on a track (Interrogatory No. 3).

D. Whether he gave a statement to any person or organization investigating the incident of June 19, 2010 (Interrogatories No. 5, No. 19).

E. His knowledge of how Defendant CVA participates in the operation of the Velodrome, and the funding it receives (Interrogatory No. 9).

F. A complete description of all his activities at the Velodrome on June 19, 2010 (Interrogatory No. 11).

G. His relationship with CVA, including the dates at which he was an officer or board member, and information on any payment, reimbursement, compensation, or any other monies he ever received from CVA (Interrogatory No. 12).

H. The complete factual basis for his assertion that he was "simply working in a volunteer capacity" at the time of the incident of June 19, 2010 (Interrogatory No. 12).

I. Whether he ever received any funds, reimbursement, compensation, goods, services, or barter or any kind for any of his activities related to CVA (Interrogatory No. 13).

J. His observations, in detail, of Emile Levy on June 19, 2010, including his observations of Mr. Levy the morning of the accident and the track conditions at the time Mr. Tyson left the Velodrome to go inside (Interrogatory No. 17).

K. Whether Mr. Tyson was the person who provided, on behalf of CVA, "on-site management" as that term is used in Paragraph 3 of Exhibit A to the Services Agreement between CVA and United States Olympic Committee, and if not, who the person providing such management was (Interrogatory No. 18).

L. A complete description of all policies, practices, or procedures which were in effect immediately prior to the accident of June 19, 2010 with respect to practicing speed runs and standing starts (Interrogatory No. 21).

M. A description of all changes that were made to those policies, and the names of the persons and organizations who made those changes (Interrogatory No. 22).

N. A copy of all e-mails, faxes, letters, or other communications discussing the accident, with exception for attorney communications (Request for Production No. 1).

O. Print-outs from any social networking site to which he belonged or in which he participated, after June 19, 2010, that contain any reference to the events of June 19, 2010 and their aftermath (Request for Production No. 2).

P. A copy of all policies, procedures, or safety regulations regarding the Velodrome which were in his possession on June 19, 2010 (Request for Production No. 3).

Q. A copy of all policies, procedures, or safety regulations which were posted at the Velodrome on June 19, 2010, and after that date (Requests for Production No. 4, No. 5).

R. A copy of all policies, procedures, or safety regulations which were in effect at the Velodrome immediately prior to the accident of June 19, 2010 (Request for Production No. 6)

S. A copy of all documents in his possession that describe, report on, or analyze collisions on Velodromes, anywhere in the world, occurring both before and after June 19, 2010 (Request for Production No. 13).

T. An admission that he knew, prior to June 19, 2010, that cycling on a Velodrome was an inherently dangerous sport (Request for Admission No. 1).

U. An admission that he knew, prior to June 19, 2010, that cycling on a Velodrome included dangers associated with collisions with other riders (Request for Admission No. 2).

V. An admission that he knew, prior to June 19, 2010, that cycling on a Velodrome included the possibility of serious physical injury, paralysis, disability, or death (Requests for Admission No. 3, No. 4).

7. In addition, to this written discovery, I plan on deposing Mr. Tyson, and others who have knowledge of Velodrome operations and collisions on Velodrome, as part of Plaintiff's discovery efforts in this matter.

8. The discovery sought from Defendant Tyson is designed, in part, to probe his claim that he was only a "volunteer," and to ascertain to what extent, if any, his liability in this matter extends beyond ordinary negligence.

9. Some of the discovery sought from Defendant Colorado Velodrome Association included the following:

A. Wether any of its directors, officers, or employees had any knowledge, prior to June 19, 2010, of prior collisions on Velodromes involving cyclists performing timing runs or speed runs and stationary persons or objects (Interrogatory No. 2).

B. Whether any of its directors, officers, or employees gave any statements to any persons, insurers, or organizations investigating the

            accident of June 19, 2010 (Interrogatories No. 5, No. 16).
- C. How Defendant CVA participates in the operation of the Velodrome, which persons act on behalf of CVA in that participation, and what funding CVA receives for that participation (Interrogatory No. 8).
- D. Whether Defendant CVA has ever paid any funds, reimbursement, compensation, goods or services, or barter of any kind to Defendant Tyson for any of his activities related to the CVA, and details of those payments (Interrogatory No. 10).
- E. A description of all monies Defendant USOC paid to CVA in exchange for the services Defendant CVA provided at the Velodrome (Interrogatory No. 12).
- F. A description of all funds CVA received from Emile Levy or his wife (Interrogatory No. 13).
- G. Information on policies, practices, and safety procedures at the Velodrome in effect on June 19, 2010 (Interrogatories No. 18, No. 19).
- H. A copy of all e-mails or other communications referencing the accident of June 19, 2010 or its aftermath (Request for Production No. 1).
- I. A copy of all CVA policies, procedures, or safety regulations which were in force at the Velodrome on June 19, 2010, posted there, or handed out to Emile Levy and/or the Kacala Defendants (Requests for Production No. 2, No. 3, No. 8).
- J. A copy of all CVA policies, procedures, or safety regulations which were changed as a result of the accident (Request for Production No. 6).
- K. A copy of all documents which establish, explain, delineate, clarify, or otherwise set out the relationship between Defendant CVA and Defendant Tyson (Request for Production No. 7).
- L. A copy of Defendant CVA's complete investigation file for the accident of June 19, 2010 (Request for Production No. 16).
- M. A copy of all documents in the possession of CVA that describe, report on, or analyze collisions at Velodromes between cyclists practicing speed runs or timing runs and any stationary persons or objects on the track (Request for Production No. 17).
- N. An admission that CVA knew, prior to June 19, 2010, that cycling on a Velodrome is an inherently dangerous sport (Request for Admission No. 1).
- O. An admission that CVA knew, prior to June 19, 2010, that cycling on a Velodrome included dangers associated with collisions with other riders (Request for Admission No. 2).
- P. An admission that CVA knew, prior to June 19, 2010, that cycling on

a Velodrome included the possibility of serious physical and/or mental trauma or injury, or death (Request for Admission No. 3).

10. In its initial disclosures, Defendant United States Olympic Committee made a reference to "best practices" at the Velodrome, stating in a preliminary report: "Following investigation by USOC, NGB [National Governing Body], and CVA management, an outside audit of process and procedures shall be conducted to ensure that best practices regarding safety are in place and enforced on a going forward basis." This statement suggests a finding by Defendant USOC that Defendant CVA, or its agents, did not implement or enforce best practices with respect to safety at the Velodrome in Colorado Springs.

11. In addition, I anticipate that depositions of other parties or witnesses in this case will demonstrate that prior accidents with similar fact patterns as the accident of June 19, 2010 were known to Defendants, including Defendant Tyson, who claims to have been involved in cycling activities, at the national level, for many years.

12. Once written discovery has been completed, I also intend to depose the Rule 30(B)(6) representative(s) of Defendant Colorado Velodrome Association, in part to ascertain its assertions of being a current non-profit 501(c)(3) organization, and in part to explore the claimed "volunteer" status of Defendant Tyson and his past and present roles within the organization.

13. All this discovery, taken together, is expected to shed light on Defendant Tyson's claim that he enjoys "volunteer" status, and on his claim that, in the event he does enjoy such status, he did not act with sufficient purposefulness or in bad faith so as to disallow the grant of immunity to liability extended to volunteers under federal or Colorado law.

FURTHER, AFFIANT SAYETH NAUGHT.

_____
Pierre Levy

SUBSCRIBED AND SWORN TO before me, a notary public, on this 19th day of August, 2011, by Pierre Levy, a person known to me.

\_\_\_7-1-2012\_\_\_                              \_\_\_[signature]\_\_\_
My Commission Expires                          Notary Public

OFFICIAL SEAL
**Chris Chavez**
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: 7-1-2012