

## SERVICES AGREEMENT

THIS SERVICES AGREEMENT ("Agreement") is executed and made effective this 1 day of May, 2010 (the "Effective Date"), by and between the United States Olympic Committee ("USOC") and Colorado Velodrome Association ("Service Provider"), a 501(c)(3) corporation organized under the laws of the State of Colorado upon the following terms and conditions.

NOW, THEREFORE, for valuable consideration given and received, the receipt and sufficiency of which are hereby acknowledged, the parties intending to be legally bound, do agree as follows:

I.   FACILITIES, SERVICE PROVIDER AND USOC DUTIES

Section 1.1   Facilities.   The Service Provider desires to use the Velodrome facility (the "Facility") that is operated by the USOC as set forth in Exhibit A attached hereto and made a part hereof.

Section 1.2   Service Provider Duties.   USOC hereby retains Service Provider for the purposes set out in Exhibit A, to act as an independent contractor in rendering services to the USOC's Facility as more fully described in Exhibit A.

Section 1.3   Professional Standards.   Consultant shall perform the services described in Exhibit A in accordance with commonly accepted professional standards for consultants in the same industry as Consultant.

Section 1.4   USOC's responsibilities.   The USOC's duties pursuant to this Agreement are as set forth in Exhibit A.

II.   TERM; SCOPE

Section 2.1   Term.   This Agreement shall commence on the Effective Date and shall continue until October 31, 2010, unless terminated as set forth herein. The Service Provider may use the Facility during the Term except during USOC programming as outlined in Exhibit A.

III.   CONSULTING FEE; EXPENSES

Section 3.1   Payment.   In exchange for Service Providers use of the Facility and Service Provider's Services as set forth herein, the parties shall have the responsibility to pay the items set forth in Exhibit B.

Section 3.2   Expenses.   The USOC shall not reimburse Service Provider for any expenses incurred in performing the consulting services herein.

*JMDE*



EXHIBIT

**5**

USOC-00036

 

IV.   NON-EMPLOYMENT AND NO BENEFITS

Section 4.1      Non-Employment. FOR THIS AGREEMENT AND FOR ALL
OTHER PURPOSES, CONSULTANT SHALL BE CONSIDERED AN
INDEPENDENT CONTRACTOR OF THE USOC. NEITHER CONSULTANT,
NOR ANY OF ITS PRINCIPAL(S), EMPLOYEES, SUBCONTRACTORS OR
AGENTS SHALL BE CONSIDERED AN EMPLOYEE OF THE USOC. If for any
reason a court of law or other government agency determines that Consultant, its
principal(s), employees, subcontractors, or agents should have been classified as
employee(s) of the USOC for all or any part of the term during which Consultant is
performing services for the USOC, Consultant agrees that Consultant, its principal(s),
employees, subcontractors, or agents who should have been classified as employees
shall be considered to have belonged to a category of USOC employee specifically
not entitled to benefits under any of the USOC's benefit programs. Further,
Consultant understands, acknowledges, and agrees that this Agreement is not an offer
of employment to Consultant, its principal(s), employees, subcontractors, or agents,
that no such offer has been made, and that this Agreement outlines the full extend of
the understanding between the parties.

Section 4.2      Notification to Consultant's Employees, Subcontractors and Agents.
Consultant agrees to inform all of Consultant's principal(s), employees,
subcontractors, and agents who perform pursuant to this Agreement, that under no
circumstances are they, or will they be considered to be, employees of the USOC.
Likewise, the parties recognize and understand that under no circumstances will the
principal(s) employees, subcontractors or agents of Consultant, who perform pursuant
to this Agreement, be considered to be employees of the USOC.

Section 4.3      No Benefits. Neither Consultant, nor Consultant's principal(s),
employees, agents or subcontractors shall participate in any Insurance, incentive
compensation, or other benefit programs which may be applicable to the employees
of the USOC. Specifically, Consultant understands and agrees that Consultant and its
principal(s), employees, agents and subcontractors are not entitled to participate in
any of the USOC's benefit plans.

Section 4.4      Vacation, Sick and Personal Leave. Neither Consultant, nor
Consultant's principal(s), employees, agents or subcontractors shall earn, accrue or be
entitled to vacation, or sick or personal leave.

Section 4.5      Workers' Compensation. NEITHER CONSULTANT, NOR
CONSULTANT'S PRINCIPAL(S), EMPLOYEES, AGENTS OR
SUBCONTRACTORS SHALL BE COVERED UNDER THE USOC'S
WORKERS' COMPENSATION INSURANCE. CONTRACTOR IS
RESPONSIBLE FOR OBTAINING AND MAINTAINING, OR OTHERWISE
SECURING, APPROPRIATE WORKERS' COMPENSATION COVERAGE FOR
ITS PRINCIPAL(S), EMPLOYEES, AGENTS AND SUBCONTRACTORS.

USOC-00037

 

Section 4.6     Unemployment Compensation.  NEITHER CONSULTANT NOR CONSULTANT'S PRINCIPAL(S), EMPLOYEES, AGENTS OR SUBCONTRACTORS ARE ENTITLED TO UNEMPLOYMENT COMPENSATION BENEFITS DUE TO CONSULTANT'S PERFORMANCE OF CONSULTING SERVICES UNDER THIS AGREEMENT OR DUE TO TERMINATION OR NONRENEWAL OF THIS AGREEMENT.

Section 4.7     Employment Taxes.  CONTRACTOR IS RESPONSIBLE FOR ALL EMPLOYMENT TAXES, INCLUDING FEDERAL AND STATE TAXES AND UNEMPLOYMENT TAXES, FOR ITS PRINCIPAL(S), EMPLOYEES, AGENTS, AND SUBCONTRACTORS.

V.     SERVICE PROVIDER'S OBLIGATIONS

Section 5.1     Non-Assignment.  The USOC has specifically contracted for Service Provider's services, and Service Provider may not assign or delegate its obligations under this Agreement, either in whole or in part, to any other person, firm or corporation without the prior written consent of the USOC.  Service Provider's breach of this provision shall be grounds for immediate termination of this Agreement.

Section 5.2     Facilities.  Service Provider shall provide Service Provider's own equipment, materials, appropriate assistance, and services for the performance of Service Provider's duties, except as provided otherwise herein.

Section 5.3     Control.  Service Provider shall control its own employees, agents and subcontractors and shall ensure that the above described services are performed in accordance with applicable law, recognized standards of practice and the terms of this Agreement.

Section 5.4     Other USOC Vendors.  Service Provider agrees to work with USOC's other vendors, sponsors, and/or product donors as requested by the USOC.

Section 5.5     Indemnification.  Service Provider shall be responsible for, and shall indemnify, defend and hold the USOC, its volunteers, committees, members, committee members, officers, directors, employees, and agents harmless from all loss, damage, injury or liability arising from the acts or omissions of Service Provider or any of Service Provider's employees, agents or subcontractors in the performance of services under this agreement.

Section 5.6     Insurance.  Service Provider shall comply with the insurance requirements set forth in Exhibit C attached hereto by either: (i) obtaining its own insurance, or (ii) if possible, Service Provider may permit and/or obtain sanctioning for all of its training and racing sessions through USA Cycling; provided that such permitting and/or sanctioning ensures that USA Cycling's insurance policies (x) meet the insurance requirements and (y) cover all of Service Provider's permitted/sanctioned events.  Any failure to have insurance during the Term will be grounds for immediate termination of this Agreement.

3

USOC-00038

 

Section 5.7    Taxes.  SERVICE PROVIDER AGREES TO PAY ALL
APPLICABLE STATE AND FEDERAL TAXES ON THE MONIES RECEIVED
BY SERVICE PROVIDER UNDERT THIS AGREEMENT.  THE USOC WILL
REPORT PAYMENTS TO SERVICE PROVIDER ON THE IRS FORM 1099.

## VI.    TERMINATION

Section 6.1    Termination.  This Agreement terminates upon the completion of
services described in Exhibit A, or on the date specified in Exhibit A.  To the extent
Consultant continues to provide services similar to those described in Exhibit A after
the date set for termination of this Agreement, the terms of this Agreement shall
continue to control the relationship between the parties until such time as either party
terminates the Agreement and the relationship.  Notice of termination shall be sent in
accordance with Article VII below.

## VII.    NOTICES

Section 7.1    Notices.  All notices given by one party to the other under this
Agreement shall be in writing, mailed or delivered personally, by fax, or by overnight
delivery to the other party at the following addresses:

> If to the USOC:
>
>> The United States Olympic Committee
>> One Olympic Plaza
>> Colorado Springs, CO 80909
>> Attn:  Chief Executive Officer
>> Fax:  (719) 866-4839
>>
>> With a copy to the USOC General Counsel (at the same address and
>> fax number
>
> If to Service Provider:
>
> Colorado Velodrome Association
> 236 Writers Way
> Colorado Springs, CO 80903
> (719) 466-9109

Either party may at any time, by proper notice, designate a different address or fax
number to which notices shall be sent.

Mailed notices shall be sent by United States Mail, certified or registered, return
receipt requested, postage prepaid.  Notices shall be deemed to have been duly given

USOC-00039

and received (a) seventy-two hours after depositing the notice in the United States Mail, if mailed, (b) on the day after the date sent, if sent by overnight express mail, (c) on the day of delivery, if hand delivered, (d) on the date confirmed by fax confirmation, if sent by fax, and (e) on the date delivered, if by commercial delivery service.

## VIII.   MISCELLANEOUS

Section 8.1     Applicable Law.   The laws of the State of Colorado shall govern the validity, performance and enforcement of this Agreement.

Section 8.2     Modifications.   This Agreement shall not be modified except in writing executed by both parties.

Section 8.3     Severability.   The invalidity or unenforceability of any provision hereof shall in no way affect the validity or enforceability of any other provision.

Section 8.4     Representations.   The parties hereto acknowledge and agree that they have not relied upon any statements, representations, agreements, or warranties, except such as are expressed in this Agreement.

Section 8.5     Dispute Resolution.   Any dispute concerning the interpretation of this Agreement, or the parties' obligations under this Agreement, shall be resolved by final binding arbitration submitted to the American Arbitration Association. Arbitration shall be conducted under the then-existing rules of the American Arbitration Association for Commercial Arbitration, except as amended herein. The place of the arbitration shall be in Colorado Springs, Colorado, unless otherwise agreed to by the parties. The arbitrator will be selected pursuant to the mutual agreement of the parties, and if the parties are unable to agree, the arbitrator will be designated by the Administrative Office of the American Arbitration Association. Any award rendered by the arbitrator shall be enforced, if necessary, in the Fourth Judicial District Court, State of Colorado. The arbitrator may award any relief recognized by Colorado law, which could be awarded by a District Court of this State, including injunctive relief and attorneys' fees. The arbitrator may award reasonable attorneys' fees and costs as set forth in Section 8.6 below.

Section 8.6     Reimbursement of Attorneys' Fees and Costs.   In any dispute concerning this Agreement, in the event that either party must employ legal counsel to enforce its rights hereunder, then the prevailing party shall be entitled to reimbursement of all fees and costs, including reasonable attorneys' fees, from the non-prevailing party, whether or not legal action or arbitration is instituted.

Section 8.7     Confidential Information.

(a) Service Provider acknowledges that, in the course of providing services to the USOC, Service Provider and its employees, agents and subcontractors may have access to information that is not known by, or generally available to, the public at large and which concerns the business or affairs of the USOC, or the National

5.                                    MDZ

 

Governing Bodies or Paralympic Sports Organizations. Service Provider and its employees, agents and subcontractors may also have access to information provided to the USOC by third parties on a confidential basis (collectively, "Confidential Information").

(b) Service Provider and its employees, agents and subcontractors shall preserve and protect the confidentiality of Confidential Information and all physical forms thereof. Neither Service Provider nor its employees, agents or subcontractors shall use any Confidential Information for Service Provider's own benefit or for the benefit of any third party.

(c) All records, files, and documents (or copies thereof) which Service Provider prepares, uses, or comes into contact with and which contain Confidential Information, will be and remain the sole property of the USOC and will not be disclosed to any third party without the prior written consent of the USOC. The USOC shall have no obligation to identify specifically any information as to which the protections of this Section 8.7 apply.

(d) Should the USOC receive credible evidence to demonstrate satisfactorily to the USOC (at the USOC's sole discretion) that Service Provider has breached the provisions of this Section, the USOC's obligations to make payments set forth in this Agreement shall immediately cease.

(e) Upon termination of this Agreement, or upon request by the USOC, Service Provider agrees to promptly return to the USOC all documents and tangible forms of Confidential Information that Service Provider may have obtained from the USOC, as well as all tangible forms of Confidential Information created by Service Provider for the USOC prior to or during the term of this Agreement. Service Provider shall not retain any documents or other materials, or any copies or excerpts in any form, which contain or pertain to any Confidential Information, unless otherwise authorized by the USOC in writing.

Section 8.9      Non-Disparagement and Cooperation.  Service Provider hereby agrees not to disparage the principals or agents of the USOC in any manner whatsoever during the term of this Agreement or after its completion or early termination. Should the USOC receive credible evidence to demonstrate satisfactorily to the USOC (at the USOC's sole discretion) that Service Provider has breached the provisions of this Section, the USOC's obligations to make payments set forth in this Agreement shall immediately cease. Service Provider agrees that these terms are material parts of this Agreement, and that, should Service Provider breach these terms, the USOC will have a claim against Service Provider for damages, including the amounts paid to Service Provider under the Agreement. Service Provider also agrees that Service Provider will cooperate with and fully support the USOC, and make its principals, agents, employees and subcontractors available to the USOC to give testimony and/or evidence, in all administrative, regulatory, criminal, arbitration, and/or civil litigation proceedings in which the USOC is a party or in

6

 

which the USOC is otherwise requested to give evidence with respect to events that occurred or circumstances that arose during the term of this Agreement.

Section 8.10    Effect of End of Term or Termination. Provisions of this Agreement relating to confidentiality and the nondisclosure of Confidential Information, ownership of Work Product, non-disparagement, cooperation, indemnification and insurance shall survive the term or termination of this Agreement.

Section 8.11    Publicity. Neither party shall at any time disclose (other than to its officers, directors, employees and professional advisors with a need to know, as applicable) any of the terms of this Agreement or make any public announcement (which includes postings to Service Provider's website) concerning this Agreement, or Service Provider's affiliation with the USOC, without prior written consent of the USOC. Any officer, director, employee, or professional advisor of a party receiving information about this Agreement that is not otherwise public shall treat such received information as confidential. Further, nothing in this Agreement shall be construed as giving Service Provider, its employees, agents or subcontractors the right to advertise or publicize its affiliation or relationship with the USOC or to use Olympic terminology in any way to promote its services without the prior written consent of the USOC.

THIS AGREEMENT IS A LEGAL INSTRUMENT, AND SERVICE PROVIDER SHOULD CONSULT AN ATTORNEY IF SERVICE PROVIDER DOES NOT FULLY UNDERSTAND THE TERMS AND CONDITIONS HEREOF.

In witness whereof, the

THE UNITED STATES OLYMPIC COMMITTEE

Date: 5/18/10    By: _____

MICHAEL D. ENGLISH

CHIEF OF SPORT PERFORMANCE

SERVICE PROVIDER:

Date: AP 22, 2010    By: _____

PAT MCDONOGH - Pres. It

Colorado Velodrome Association

7

MDE

USOC-00042

 

## EXHIBIT A
### SERVICES

Service Provider shall provide the following service(s):

1. Establish the weekly and season training and racing schedules, as pre-approved by the USOC. CSOTC Director will host and Service Provider shall attend and participate in weekly planning sessions to outline upcoming schedules and discuss track need for CSOTC programming. USOC elite level programming will take priority over Service Provider racing schedules with a 14 day notice.

2. Provide daily oversight and management of the following velodrome programming:
   i. Track Training Center time (USA Cycling programmed)
   ii. CVA & USAC training time
   iii. Community programming (includes coaching)
   iv. Development racing
   v. Tuesday and Thursday night racing
   vi. Other events not specified above()

3. Open the facility on a daily basis as per the schedule set forth in item number one above, and provide on-site management throughout the agreed-upon scheduled hours.

4. Provide weekly reports to the USOC consisting of an overview of the daily activities, fees collected, incident reports, etc.

5. For the community programs that the Service Provider conducts and provides coaching services (e.g. Youth Cycling League), all said coaches will be USAC-certified coaches.

6. Lock the facility on a daily basis as per the agreed-upon schedule and will immediately report to the USOC any loss or damaged property that occurred on a given day.

7. Will make every effort to promote the sport of cycling, the USOC and Colorado Springs in all of our programs and promotions.

8. Will read, understand and be prepared to exercise the Emergency Action Plan (EAP) created by the USOC set forth in Exhibit D.

8

The CVA will collect the following fees for services at the velodrome, and shall submit to the CSOTC Director weekly revenue reports during the weekly meetings:

1.  Training: The Service Provider will collect fees from riders for participating in training times. This fee will be split 50/50 between the USOC and the Service Provider. Training Fees will be forwarded to the USOC on a monthly basis accompanied by a full report.

    Fees will be charged at the following rates:

    Day Rate:    $20 per rider/community users, specifically youth users, will pay a reduced rate of $20/program.

    Annual Pass:   $150 per rider

2.  Community Programs: The Service Provider will collect a $10 per program charge from riders for participating in any community programs. This fee will be split 50/50 between USOC and the Service Provider. Program Fees will be forwarded to the USOC on a monthly basis accompanied by a full report.

3.  Racing: The Service Provider will collect a $10 per day charge from riders for participating in the racing programs. (Riders participating in racing AND training programs on the same day will not be double charged). This fee will be split 50/50 between the USOC and the Service Provider. Training Fees will be forwarded to the USOC on a monthly basis accompanied by a full report.

Other:

1.  Sponsorship: With the USOC's prior approval, which can be granted or withheld by the USOC in its sole discretion on a case-by-case basis, the Service Provider will be permitted to sell sponsorship rights for events and programs that it conducts at the Facility during the Term. The USOC's approval rights will extend to all proposed sponsorship and marketing materials. The Service Provider must ensure that there is no commercial association between any Service Provider sponsor or other commercial partner and the USOC or the U.S. Olympic or Paralympic Teams, unless such entity is

9

M̃D̃Z̃

 

a USOC sponsor. The USOC will provide the Service Provider with a list of USOC sponsors and their categories.

2. Food and Concessions: The Service Provider will be allowed to sell USOC-approved pre-packaged food/drink at the Facility and to retain all revenue derived from such. If the Service Provider chooses to bring in an outside food vendor, said vendor must be pre-approved by the USOC.

3. Event Promotion: The Service Provider may promote cycling events at the Velodrome during the Term provided that all material that references the USOC will be pre-approved by the USOC. The Service Provider will be permitted to retain all revenue derived from gate fees (spectator tickets) for cycling events at the velodrome facility.

The USOC will provide the following to assist the CVA:

1. Provide two (2) sets of keys and any other access necessary to allow for the management of the facility.

10

USOC-00045

 

## EXHIBIT B
## COMPENSATION

In consideration for the services hereunder, the USOC shall:

1. Pay utility costs associated with the velodrome property up to the agreed-upon budget set by the USOC. The USOC will provide the Service Provider with monthly updates regarding the utility expenses.

2. Pay for maintenance and upkeep of the velodrome and ancillary facilities, including, but not limited to cleaning of restrooms, providing toilet paper, soap and other supplies for the restrooms, upkeep of lights and sound system, First Aid supplies, and all other facilities being utilized by the Service Provider.

3. Reserve the right to program the outdoor lighting around the Service Provider and USOC programming. The Service Provider will be provided a key to override the programming to minimize unnecessary utility costs.

In consideration for use of the Facilities, the Service Provider shall pay:

On a monthly basis, the Service Provider will forward to the USOC its share of the training, community program, and racing fees (as more fully detailed in Exhibit A above).

Notwithstanding the foregoing, in the event the USOC terminates this Agreement prior to the expiration of the term of this Agreement and in accordance with this Agreement, the USOC shall be relieved from making any future payments under the payment schedule set forth directly above.



USOC-00046

 

## EXHIBIT C

### INSURANCE

Without limiting any other obligation or liability of Service Provider under this Agreement, Service Provider agrees that upon execution and throughout the term of this Agreement, Service Provider shall procure and maintain the following insurance coverage:

1.1   Commercial General Liability Insurance with limits of not less than One Million Dollars ($1,000,000) per occurrence/Two Million Dollars ($2,000,000) aggregate, which includes Bodily Injury and Property Damage, and Personal and Advertising Liability coverages. Said coverage shall waive subrogation in favor of USOC and will name "United States Olympic Committee and its directors, officers, employees, volunteers, agents and representatives as Additional Insureds" as respects this Agreement.

1.2   Workers Compensation with statutory limits as applicable in any State in which Service Provider conducts business and Employers Liability Insurance with limits of not less than One Million Dollars ($1,000,000). Said coverage will waive subrogation in favor of USOC

1.3   Accident insurance covering all participants involved in service providers activities with limits of not less than $25,000 per covered accident, with a deductible not to exceed $500 per accident. Coverage may be written on a secondary basis to coverage carried by or on behalf of any individual participant.

Certificate/Proof of Insurance

2.1   Upon executing this Agreement or commencing work under this Agreement, Service Provider will provide and maintain a valid Certificate/Proof of Insurance evidencing all required coverage hereunder. Said Certificate of Insurance shall include evidence as necessary to demonstrate that all required conditions have been met. The USOC shall be designated as the Certificate Holder and the certificate should be sent to the attention of USOC Risk Management, 1 Olympic Plaza, Colorado Springs, CO 80909.

Miscellaneous Requirements

3.1   Service Provider shall be responsible for all deductibles, retentions, or other co-insurance.

3.2   All insurance policies shall provide for thirty (30) days written notice to the USOC if canceled prior to expiration, non-renewed or material change, and ten (10) days written notice of cancellation due to non-payment of a premium.

3.3   All insurance policies shall be written by company(ies) qualified to conduct business in the State(s) in which Service Provider conducts business and shall be reasonably acceptable to USOC.

3.4   In the event that any required insurance is written on a claims-made basis, such policy(ies) shall be maintained during the entire period of this Agreement with a retroactive date concurrent with or preceding the effective date of this Agreement, and for a period of not less than three (3) years following the termination or expiration of this Agreement.

12



USOC-00047

 

## Exhibit D

**A.    FIRE**
1.  Ensure that the fire alarm is pulled immediately if a fire is spotted.

2.  Assist with crowd control to remove everyone from the facilities immediately.  Team members and guests should exit the facilities through the nearest exit doors.

3.  Close all open doors upon exiting the building. The Service Provider will ensure that the entire facility is cleared of guests. Once outside, individuals should walk to the nearest parking lot away from the building.
4.  Notify the Venues On-Call (719-351-5396) personnel immediately.

**B.    BLOOD SPILL**
The Service Provider has the following duties:
1.  Follow protocol for Bloodbourne Pathogen training if certified.
2.  Keep the victim calm and treat as required for the situation.
3.  Notify the Venues On-Call for assistance in clean up if needed.

**C.    DRILLS**
An in-service safety and first aid program is ongoing within the USOC (OTC Venues Department.)  Several times a year meetings are held to review first aid and safety procedures required for Venue Operations duties.  The Service Provider will be expected to participate when asked to do so.

**D.    MISUSE OF FACILITY**
If a guest must be ejected from the Facility for violating the established rules and regulations regarding its operation, an incident report set forth in **Exhibit E** must be completed by the Service Provider and the individual's organization must be notified.  If a guest becomes abusive toward any Service Provider, the Venues On-Call may be called to intervene.

**E.    TORNADO & STORM WARNINGS**
***Be prepared for power outage ***
1.  In case of a tornado, escort all guests, athletes, coaches and staff members to the lower levels of the Facility.
2.  Wait there until instructed to vacate the premises.
3.  Notify the Venues On-Call personnel.

**F.    ELECTRICAL OUTAGES**
1. Emergency lighting will illuminate in specified areas.
2. Have guests sit calmly or have them exit the Facility until outage is fixed.
3. Notify the Venues On-call personnel as soon as possible.

**G.    INDOOR AIR QUALITY INCIDENT**
1.  An IAQ incident may be the result of many scenarios such as; fumes being drawn into the Facility through the HVAC system from an outside source, a chemical spill, airborne mold of fungus, out-gassing of adhesives or solvents, etc.
2.  Notify the Venues On-Call IMMEDIATELY and await instructions.
3.  Depending on the nature and severity of the incident, the Facility may require extra ventilation to mitigate adverse effects, or is circumstances are severe; the Facility may need to be evacuated.

**H:    FIRST AID OR MEDICAL EMERGENCY**
1.  Call 911 or provide basic First Aid based on severity of injury.
2.  Do NOT transport the victim.  Call an ambulance for transport.
3.  Notify Venues On-Call personnel.
4.  Fill out an incident report as set forth in **Exhibit E (or assist Venues on-call in this)**.

13



**EXHIBIT E**

**OLYMPIC TRAINING CENTER
VELODROME INCIDENT REPORT**

**FILL OUT AND SUBMIT TO OTC DIRECTOR WTIHIN 24 HOURS OF INCIDENT**

VICTIM'S NAME _____
  ADDRESS _____
  PHONE _____ S.S. # _____

1. Location of the Incident _____

2. Date and time of Incident _____

3. Check the program type in which the incident occurred:
  _____team practice  _____class  _____other
  Specify program if not listed _____

4. Type of supervision at the time of the accident:
  _____Coach  _____USOC Staff  _____Instructor
  Name of staff member supervising _____

5. Type of Injury: (Bruise, Laceration, fracture, etc)
_____
_____

6. Location of Injury: (arm, head, spinal, etc)
_____

7. Describe objectively what happened, how the incident occurred.  Use the reverse side if necessary.

_____
_____
_____
_____
_____
_____
_____
_____

14



USOC-00049

_____
_____
_____
_____
_____
_____

8. What conditions contributed to the cause of the incident:
_____ Participation in unsafe activity
_____ Lack of knowledge or skill
_____ Defective facilities or equipment
_____ Personal factor, explain_____

9. What FIRST AID was administered _____?
   By whom _____

10.    Was 911 called? ____Yes _____ No
If yes, was the victim transported to the hospital?
_____ Yes _____No
If 911 was not called, was there a referral made for the victim to go to the Hospital
_____Yes _____ No
Was assistance needed to transport to the Hospital, if so by whom?_____
Was there a referral made for the victim to go to the Sports Medicine Clinic? ____Yes ____ No
Was assistance needed to transport to the SM Clinic? If so, by whom_____

11.   Name, Address, Phone Number of Witnesses:
_____
_____
_____
_____

12. Any additional comments which are pertinent to the incident:
_____
_____
_____
_____

SIGNATURE OF THE PERSON FILING THE FORM:_____

15

USOC-00050

PRINTED
NAME:_____DATE:_____

(Describe incident continued)

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

16

USOC-00051